Bertram Harnett, J.
Trouble for an innocent tort plaintiff in collecting damages from among multiple defendants too easily intrudes where the different liability carriers each seek to avoid liability by pointing to .another, often forming a complete circle. This game of “ who, Me? ”, which discredits our system of justice, is made worse when the State becomes its active promoter. And, even section 167 of the New York Insurance Law, providing for direct legal action against liability carriers, which is meant to protect claimants, becomes a playing tactic. Marcy and Irene Brown could tell you.
I. Pretrial default determined defendants’ liability.
The Browns sued to recover for personal injuries suffered on September 13, 1965 when Mrs. Brown’s stationary car was struck in the rear by Horace Reid’s car operated by Buck Gowans, and for the loss of Mrs. Brown’s services to Mr. Brown. Mr. Justice Farley rendered a written decision on April 29, 1970 finding that Reid, as codefendant, had willfully failed to appear for examination before trial. On May 26,1970, Mr. Justice Farley’s order struck Reid’s answer, and directed that judgment be entered against Reid upon an assessment of damages. *239 By the same order, Gowans was to have been liable if he failed to comply with conditions relating to pretrial discovery procedures.
At the trial of the remaining issues held in September, 1972, the Motor Vehicle Accident Indemnification Corporation (MVAIC) appeared to defend the claim against the uninsured driver Gowans, who was absent throughout the proceedings. Car owner Reid did appear personally in the court. Reid’s attorney, retained on his behalf by his carrier, Knickerbocker Insurance Company (Knickerbocker), now in liquidation under .the supervision of the New York State Insurance Department, appeared throughout on his behalf. After a trial on the question of Gowans’ failure to comply with the pretrial discovery conditions, he was determined liable by this court for failure to comply with the pretrial directives of Mr. Justice Farley. The court found that MVAIC’s efforts to locate Gowans were not reasonable, following witnesses put on by MVAIC and Knickerbocker.
A jury trial in assessment of damages was then held, resulting in a modest jury award of $2,500 in favor of Irene Brown for personal injuries and $585 in favor of her husband, Marcy, for loss of her services.
The Knickerbocker attorney for Reid had claimed there was nonpermissive use by the driver Gowans, and had moved to vacate the prior default and judgment against Reid. The court reserved decision on that motion, and now decides it against Reid.
The motion to vacate carried no showing of any basis for disturbing the prior order determining the liability of Reid and Gowans, entered over 29 months ago. No satisfactory explanation was offered for Reid’s failure to appear for examination in 1970, nor for his delay in seeking to correct the default. No affidavit or sworn testimony was submitted to establish Reid’s effort, if any, to avoid his prior default.
The motion to vacate Reid’s default must therefore be denied. Since Reid’s answer contained an affirmative defense of non-permissive use by Gowans and was stricken, the complaint now standing alone establishes that there was, in fact, permissive use by the driver Gowans of Reid’s automobile. The issue of permissive use has been determined, therefore, adversely to Reid and cannot now be raised by him in contest of the judgment rendered.
Accordingly, since no basis exists for relieving Reid, or Gowans for that matter, of the effect of the prior order, the jury *240 verdict totaling $3,085 stands jointly and severally against both oflthem.
II. The conflict between the carriers.
•From the start, the Browns have been caught between the two carriers. In fairness, the court must report its view, gathered to be sure in discussions with all counsel in chambers, that the case is of the clear-cut ‘ hit in the rear ’ ’ genre with quantitatively unremarkable whiplash injuries, although they were doubtless wounding to the Browns. All counsel present were sophisticated and capable, and it was apparent that in the normal “ one-on-one ” situation the case would have been settled without trial, at a much earlier stage.
However, the feature which blocked progress was Knickerbocker’s insistence that, despite the default judgment against Reid on the liability issue, there was nonpermissive use by Gowans which exculpated both Reid and Knickerbocker, leaving only Gowans and MVAIC liable. Conversely, MVAIC’s insistence was that, by virtue of the default judgment against Reid, the issue of nonpermissive use was precluded, causing coverage for Reid and a necessary exit for MVAIC, which need not pay if other coverage exists (Insurance Law, § 167, subd. 2-a).
Both the New York State Insurance Department, as liquidator of Knickerbocker, and MVAIC, a statutory instrumentality, made it plain that regardless of the outcome here, neither would pay the Browns, leaving them with the necessity of bringing yet another proceeding under section 167 of the New York Insurance Law to recover on this 1965 accident. The State representatives take apparent comfort in the fact that neither carrier is expressly a party to an action formally denominated as a proceeding under section 167 of the New York Insurance Law, and, bytheir action, exhibit indifference to the effect of delay on the Browns and their attorney.
Can a court simply shrug at the vagaries of legal fate and bureaucratic entanglement, and walk away from the game ? Or should it take a closer look at the rule book?
A. The carriers’ appearances here and the issues raised.
MVAIC and the New York State Insurance Department for Knickerbocker openly appeared by privately retained counsel and asserted most compelling arguments. Without the participation of the insurance companies, the entire action, including damages, would have been decided on default. The entire proceeding has been permeated with carrier participation,
*241 Mr. Reid was in the courtroom, available to both carriers, but was not called to testify on issues pertinent to coverage or, for that matter, any other material issue.
B. The statutory proceeding to determine coverage.
Section 167 of the Insurance Law sets forth the standard
provisions for liability insurance policies in New York. Paragraph (b) of subdivision 1 provides that an action is maintainable against the insurer where a judgment against the insured within the policy terms and limits remains unsatisfied 30 days after the insurer’s attorney is served with a notice of entry. That action is essentially designed to determine whether coverage exists and, in the process, to determine the validity of any defenses raised by the carriers. Additionally, MYAIC’s liability for injuries caused by an uninsured motorist may be decided under section 167 (subd. 2-a).
There are no procedural guidelines prescribed by the statute, no special service, notice or jurisdictional requirements, and, therefore, the general rules applicable under the CPLR to declaratory judgment actions apply. (See CPLR 103, subd. [c] ; 104.) A section 167 proceeding is designed only to protect injured plaintiffs (Jackson v. Citizens Cas. Co. of N. Y., 277 N. Y. 385, 390), and should include as parties the injured plaintiff having secured a favorable judgment and any carriers against whom recovery is claimed. (Brothers v. Burt, 27 N Y 2d 905; Russo v. Pacific of New York Group, 28 A D 2d 1130.)
C. The consequences of appearance and contest here: no necessity for a new separately instituted litigation under section 167 'of the Insurance Law.
The two carriers were actively present in the defense of the primary litigation and the court finds that their participation obviates the need for another separate proceeding.
Bach essential ingredient to a section 167 proceeding is already fruitfully present in this case. The plaintiffs have obtained a jury verdict and judgment against Reid and Gowans within the permitted coverage limits. The carriers, possibly liable, are present, and have full notice of the proceedings. No claim has even been suggested that the type of accident or injury occurring here was excluded from policy coverage, or that the policy was not in effect at the time of the accident.
Both carriers have had ample opportunity to review all aspects of this claim and should be ready to move forward. Indeed, the MYAIC litigation of Gowans’ supposed lack of co-operation, contested with proof by the Insurance Department for Knickerbocker, was a step along the “ 167 ” road.
*242 IIL Merits of unified procedure.
The courts generally discourage separate declaratory judgment actions against insurance companies where the basic issues are the same and resolvable in the primary negligence action. (Gilbert v. Village of Larchmont, 280 App. Div. 1000; Woollard v. Schaffer Stores Co., 272 N. Y. 304, 311; Allstate Ins. Co. v. Szego, 38 A D 2d 736.)
■ A. Waste of added litigation.
There is no sensible reason why the issue of carrier liability cannot be decided now without further unnecessary procedural proliferation. The court, on its own motion, can and should bring the section 167 proceeding into the present judicial forum, protecting for the carriers their vestigial right to stretch out the Browns, but cutting down the delay time.
In this action, both defendants, Reid and Rowans, are liable.
- However, as between Knickerbocker and MVAIC, MVAIC is liable only if no other coverage is available to pay for .the damages assessed. But, Reid is liable on the issue of permissive use. He has coverage with Knickerbocker and therefore MVAIC is not liable for an uninsured motorist unless coverage fails on other grounds.
There is no indication in this action that Knickerbocker, as supervised by the State Insurance Department (Insurance Law, § 510 et seg.), would be unable to compensate the Browns for the full amount of damages awarded.
To force the Browns to bring yet another full bloom court action in 1973, this time under the formal format of section 167 of the Insurance iLaw, in order to determine which carrier is liable for the 1965 accident, is simply disgraceful.
B. Try a little justice in .the game.
Under subdivision (3) of CPLR 103, a court having jurisdiction over parties can make whatever order is required for its proper prosecution. (Cf. CPLR 5240.) Here, action against the carriers was an implicit part of the proceeding. It was indeed the reality. Both appeared and have in fact litigated part of the coverage issue, as the record will attest.
• Mrs. Brown has been kicked around long enough by the two separate public instrumentalities under the ultimate jurisdiction of the New York State Insurance Department. Were it not for their cross contentions, this case, as a practical matter, could have been disposed of without extended litigation and delay. Even now, her rightful and modest payment is tied up in intragovernmental unit wrangling, and its value impaired.
*243 There is simply no doubt of liability to the plaintiffs, the damages are reasonable and fixed, and the State has an implicit obligation to see that Mrs. Brown, a member of the public entitled to .the department’s protection, is not stretched out in litigation.
There is, of course, no real “ game ” here. The matter is serious business for the Browns who are entitled to 'compensation. Moreover, the court is aware of the governmental problems of separate accounts for the Knickerbocker liquidating unit and the MVAIC, as well as different underlying interests to be ■ served. Yet, the State is a bridge not only between them, but also to the Browns, aggrieved members of the public. The State does not have the luxury of retreating behind the ledger sheet; it is the keeper of insurance morality.
MVAIC, a nonprofit corporation, was created by statute because of the Legislature’s “ grave concern that such innocent victims [of accidents caused by uninsured motorists] are not recompensed for the injury and financial loss inflicted upon them and that the public interest can best be served by closing such gaps ’ ’ in the law of automobile accident compensation. (Insurance Law, § 600, subd. [2].) MVAIC is examined periodically by the State, and is regulated by the State. (Insurance Law, §§ 622, 623.)
With yet another supervisory arm, the State regulates and examines insurance companies in liquidation, like Knickerbocker, and, upon request, effectively takes over the operation of the company. (Insurance Law, §§ 512, 529, 531.) Along with the obligation to conserve the company’s assets is a duty to rehabilitate the company, if possible, through continuing current operations, including payment of just "claims made. The joint responsibilities of MVAIC and Knickerbocker in liquidation, emanate from their fountainhead, the State Insurance Department.
IV. Conclusion.
Accordingly, the court will direct an immediate trial of any untried issues which may be presented under section 167 of the Insurance Law. The matter is set down for pretrial conference on January 10, 1972 at 2:00 p.m., at which time plaintiffs and the carriers, who are hereby put on notice of the proceedings to follow, shall personally appear and file any claims or defenses they may wish to raise on the question of coverage, and a prompt scheduling of the trial can be set. The court believes its direction in this matter to be just and consistent with governing legal authorities, although it recognizes a certain novelty in proceed *244 ing without the formality that tradition has come to fix. (CPLB 103, subd. [3]), and so much of CPLB 2001 as permits a court to correct irregularity in absence of prejudice, enable the court to treat the existing proceedings as embracing a proceeding against the carriers directly.
The court hopes that the State will agree, and cause the Browns to be paid promptly. But, if the litigation is to continue through this or other courts beyond the trial date fixed, the State certainly could effect some covering arrangement to pay the Browns, and let its two subsidiary arms fight the legal issues and make ultimate financial adjustment between themselves.